**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| TINA L. THOMAS | : | |
| Plaintiff, | : | |
| | | Case No. 3:07CV00167 |
| vs. | : | |
| | | District Judge Walter H. Rice |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATIONS[1]**

**I.    INTRODUCTION**

In June 2003, Plaintiff Tina L. Thomas sought financial assistance from the Social Security Administration claiming that she was under a disability due to her numerous health problems including bipolar disorder, anxiety, obsessive-compulsive disorder, severe depression, and headaches, difficulty concentrating, forgetfulness, and work-attendance problems.  (Tr. 78).  On June 1, 2002, these problems stopped Plaintiff from working.  *Id*.

After various administrative proceedings and decisions, the Social Security Administration denied Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) based on the conclusion that Plaintiff's health

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

problems did not constitute a "disability" within the meaning of the Social Security Act. (Tr. 43). The denial of Plaintiff's DIB and SSI applications constitutes a final decision subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), the administrative record, and the record as a whole.

Plaintiff seeks a reversal of the final administrative decision denying her DIB and SSI applications or, at a minimum, a remand of this case to the Social Security Administration to correct certain errors. The Commissioner seeks an Order affirming the administrative denial of Plaintiff's DIB and SSI applications.

**II. BACKGROUND**

Plaintiff challenges the decision by Administrative Law Judge (ALJ) Melvin A. Padilla denying her DIB and SSI applications based on his conclusion that she was not under a "disability" within the meaning of the Social Security Act. (Tr. 21-32).

Plaintiff was thirty-eight years old at the time of the ALJ's decision. This placed her in the category of a "younger person" for purposes of resolving her DIB and SSI applications. *See* 20 C.F.R. §404.1563(c); *see also* Tr. 31. Plaintiff has a college education, having earned a bachelor's degree in psychology. She worked over the years as a machine operator, a nurse's assistant, a janitor, a cafeteria server, and a disability mentor. (Tr. 79, 107-12, 164).

During an administrative hearing held by ALJ Padilla, Plaintiff testified about her inability to work, explaining, "I don't think I can do any job because my attendance is so bad because of the way that I feel during the weeks. I am very depressed. I suffer with anxiety, a lot of anxiety. I'm suicidal at times." (Tr. 401-02).

Plaintiff lives in an apartment with her six-week old (at the time of the ALJ's hearing) daughter. (Tr. 400). Plaintiff leaves home once or twice per month to go to the store and two or three times per month to go to doctor appointments. (Tr. 402). She cries at least once a day; her appetite is not good; she averages four hours of sleep per night and two hours during the day; she sees Dr. Siddiqi about once a month for mental health counseling; she takes medications (Zoloft and Visteril) with no side effects. (Tr. 402-04, 407). Before her pregnancy, she had been taking more medications (Prozac, Depakote, Wellbutrin, Risperdal, and "two or three others"). (Tr. 412). She has nightmares three or four times a week related to her childhood when she saw her father abuse her mother and also related to the fact that she "was molested at the age of sixteen...." (Tr. 413).

When experiencing anxiety Plaintiff cannot sit still, she has sweaty palms, she gets butterflies in her stomach, she shakes, she cannot concentrate, and she is "real anxious and jittery." (Tr. 413-14).

Plaintiff's daily activities include things she does "sometimes" such as cooking, washing the dishes, sweeping and mopping, vacuuming, making the bed, watching television, reading. (Tr. 407). On a good day, she struggles to do these things; on a bad day, she cannot do these things. (Tr. 414). She estimates that she has two good days per

week.  (Tr. 415).  Plaintiff's mother usually visits and helps with housework and cooking.  (Tr. 409).  Her aunts and cousins also help care for her baby and help cook or vacuum, and they do whatever tasks Plaintiff cannot.  (Tr. 415).

Plaintiff acknowledged during her testimony that she has a history of cocaine abuse but no longer uses cocaine.  (Tr. 404-05).  She explained, "I stopped, I voluntarily walked away from a situation and admitted myself into the hospital for help and then in the hospital I got treatment."  (Tr. 405).  Eight months before the ALJ's hearing in 2005, Plaintiff used cocaine.  Before that relapse, she had not used cocaine for two years.  (Tr. 404-05).  During Plaintiff's employment, substance abuse caused her to be late or absent from work.  (Tr. 405).  She testified that she does not drink alcohol and had not used marijuana for over seven or eight years.  (Tr. 405-06).

Plaintiff last worked as a machine operator for the General Motors Corporation, a job that she held for seven years.  (Tr. 401, 409).  She testified, "I left the job because I was missing too many days of work and they were about to fire me anyhow.  I was, I stayed depressed a lot.  Stayed at home in bed crying being suicidal ... racing thoughts in my head."  (Tr. 409-10).

In addition to Plaintiff's testimony, the administrative record contains Plaintiff's medical records.  The parties have provided detailed and informative descriptions of Reese's medical records supported with many specific citations to evidence of record.  *See* Doc. #8 at 2-9; Doc. #11 at 2-6.  In light of this, and upon the Court's consideration of the record as a whole, there is no need to expand upon the parties' well-written factual

descriptions with the exception of the opinions provided by Plaintiff's treating psychiatrist, Dr. Siddiqi, and a one-time examining psychologist, Dr. McIntosh.

Plaintiff began seeing Dr. Siddiqi in November 2003. In July 2005, Dr. Siddiqi completed a form and answered written interrogatories. (Tr. 358-70). Dr. Siddiqi wrote that Plaintiff had been in treatment for bipolar disorder since 1992. Dr. Siddiqi opined that Plaintiff's "bipolar disorder affects her mood, thinking, & behavior & this leads to inability to function & work." (Tr. 360). Dr. Siddiqi noted that bipolar disorder also impacted her ability to sleep, concentrate, and make decisions as well as causing mood swings, increased anger and isolation and paranoia. (Tr. 361).

Dr. Siddiqi observed that Plaintiff's mood lability effected her work and caused poor concentration. (Tr. 362). According to Dr. Siddiqi, Plaintiff was easily distracted due to racing thoughts and poor impulse control. (Tr. 362). Dr. Siddiqi circled answers on the form indicating her opinion that Plaintiff could not to the following:

> Behave in an emotionally stable manner; relate predictably in social situations; demonstrate reliability; maintain concentration for two hours at a time; perform activities within a schedule; complete a normal workday or work week without interruption from psychologically based symptoms; respond appropriately to changes in a routine work setting; get along with co-workers or peers without unduly distracting them or exhibiting behavior extremes; sustain an ordinary routine without special supervision; work in coordination with, or in proximity to, others without being unduly distracted by them; and accept instructions and respond appropriately to criticism from supervisors.

(Tr. 363-666). Dr. Siddiqi also checked answers indicating her opinion that Plaintiff had moderate restriction in her activities of daily functioning, moderate difficulties in social

5

functioning, and moderate deficiencies of concentration, persistence, or pace. (Tr. 366-67).

In early 2007, after ALJ Padilla issued his decision, the Social Security Administration's Office of Hearings and Appeals sent Dr. Siddiqi a written interrogatory, asking her to answer "whether you feel Ms. Thomas is disabled due to her psychiatric impairments alone, and not due to her history of substance abuse." (Tr. 386-87). In response, Dr. Siddiqi wrote that Plaintiff's "disability is due to mental illness & not due to drug & alcohol use at this time." (Tr. 387). Dr. Siddiqi also wrote that Plaintiff needed treatment for bipolar disordered (not otherwise specified) and that her current symptoms are depression, anxiety, and increased fears. (Tr. 387).

Psychologist Dr. McIntosh evaluated Plaintiff on one occasion in July 2005 for the Ohio Bureau of Disability Determinations. (Tr. 303-07). Dr. McIntosh diagnosed major depression, recurrent, in partial remission; cocaine dependence in full remission; and marijuana abuse in full remission. (Tr. 306). Dr. McIntosh assigned a GAF of 57, generally describing a person with "moderate symptoms ... or moderate difficulty in social, occupational, or school functioning.[2] (Tr. 306); *see* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at p. 34. Dr. McIntosh further wrote:

> Ms. Thomas' ability to understand, remember, and carry out one-

---

[2] Health care professionals use GAF, or Global Assessment Functioning, to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Commissioner*, 61 Fed.Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34.

>and two-step job instructions appears to be largely intact. She was able to respond relevantly to questions during the evaluation. She is somewhat socially withdrawn and uncomfortable in public, so she might have mild to moderate difficulties interacting with supervisors and co-workers. Her ability to withstand the stress and pressure of day-to-day work activity is probably mildly to moderately limited. She needs to gain her self-confidence after years of drug use in order to interact more effectively in public. Ms. Thomas' capacity to maintain concentration and attention sufficient for simple repetitive tasks seems quite good. She is able to read novels for hours and she often does this.

(Tr. 307).

### III. ADMINISTRATIVE REVIEW

#### A. "Disability" Defined And The ALJ's Sequential Evaluation

The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant (1) from performing his or her past job and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies. *Bowen*, 476 U.S. at 469-70. A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* Tr. 23-31; *see also* 20 C.F.R.

§§404.1520(a)(4), 416.920(a)(4).[3]  Although a dispositive finding at any step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the evaluation answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

### B.    ALJ Padilla's Decision

In the present case ALJ Padilla found at Step 2 that Plaintiff has the severe impairments of "affective disorder and cocaine abuse in possible early remission."  The ALJ found no other severe physical impairment.   (Tr. 24).

At Step 3 ALJ Padilla found that Plaintiff's impairments did not satisfy the criteria of a Listing-level impairment.  (Tr. 26).

At Step 4 the ALJ assessed Plaintiff's Residual Functional Capacity as follows:

---

[3]  The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding and equally applicable SSI Regulations.  *See Colvin* , 475 F.3d at 730.

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work at all levels of exertion with the following nonexertional restrictions: low stress jobs with no fast paced work, no production quotas, no dealing with the public or more than minimal contacts with coworkers and supervisors (no teamwork).

(Tr. 26). The ALJ further found at Step 4 that Plaitniff could not perform her past relevant work. (Tr. 30-31).

The ALJ's assessment of Plaintiff's Residual Functional Capacity, along with his findings throughout his sequential evaluation, led him to ultimately conclude that Plaintiff was not under a disability and hence not eligible for DIB or SSI. (Tr. 21-32).

## IV.   JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: whether substantial evidence in the administrative record supports the ALJ's factual findings and whether the ALJ "applied the correct legal criteria." *Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

"Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "'more than a scintilla of evidence but less than a preponderance..." *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review of the administrative record and the ALJ's decision is not *de novo*. *See Cutlip v. Secretary of Health and Human Servs.*, 25 F3d 284, 286 (6th Cir. 1994).

And the required analysis is not driven by whether the Court agrees or disagrees with an ALJ's factual findings or by whether the administrative record contains evidence contrary to those findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld "as long as they are supported by substantial evidence." *Rogers*, 486 F.3d at 241 (citing *Her*, 203 F.3d at 389-90).

The second line of judicial inquiry – reviewing the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *See Bowen*, 478 F3d at 746. This occurs, for example, when the ALJ has failed to follow the Commissioner's "own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing in part *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir.2004)).

**V.     DISCUSSION**

    **A.     The Parties' Contentions**

Plaintiff raises one main argument:

> The administrative law judge's finding of residual functional capacity is not supported by substantial evidence since the administrative law judge erred in his assessment of Treating Psychiatrist Siddiqi's opinion.

(Doc. #8 at 11).

The Commissioner contends that the ALJ did not err when rejecting Dr. Siddiqi's opinions but instead properly evaluated her opinions as required by the Regulations. The

10

Commissioner further contends, for numerous reasons, that the record supports the ALJ's rejection of Dr. Siddiqi's opinions and that the ALJ properly relied on the opinions provided by psychologist Dr. McIntosh. Substantial evidence therefore supports the ALJ's assessment of Plaintiff's Residual Functional Capacity, according to the Commissioner.

### B. Medical Source Opinions

Resolving the parties' contentions begins with the standards used by ALJs to weigh the various medical source opinions in the administrative record.

The treating physician rule, when applicable, requires ALJs to place controlling weight on a treating physician's opinion rather than favoring the opinion of a nonexamining medical advisor, or an examining physician who saw a claimant only once, or a medical advisor who testified before the ALJ. *Wilson*, 378 F.3d at 544; *see Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1054 (6th Cir. 1983); *see also* 20 C.F.R. §404.1527(d)(2), (e), (f). A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and if it is not inconsistent with other substantial evidence of record. *Wilson*, 378 F.3d at 544; *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997); *see also* 20 C.F.R. §404.1527(d)(2).

If a treating physician's opinion is not given controlling weight, then it must be weighed against other medical source opinions under a number of factors set forth in the Commissioner's Regulations – "namely, the length of the treatment relationship and the

frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. §404.1527(d)(2)).

In general, more weight is given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources. *See* 20 C.F.R. §404.1527(d)(1). However, the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. This occurs because the Commissioner views nonexamining sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p. Consequently, the opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization. *See* 20 C.F.R. §404.1572(d), (f).

### C. <u>Analysis</u>

The ALJ began his discussion of the medical source opinions by indicating, "The undersigned has also considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and 416.927 and SSRs 96-2p and 96-6p." (Tr. 26). In doing so, the ALJ identified the correct sources of the legal criteria applicable to evaluating medical source opinions. More specificity would have doubtlessly clarified the particular factors

applicable under the treating physician rule and the need for continued weighing under additional factors when the treating physician rule does not apply. *See* 20 C.F.R. §404.1527(d)(2)-(6). Still, it was not an error of law for the ALJ to omit a more specific discussion of the applicable legal criteria since his citations are accurate and since his decision can (and must) be studied further to determine what specific legal criteria he used to evaluate the medicals source opinions and whether substantial evidence supported his factual findings.

    The ALJ reasons for rejecting Dr. Siddiqi's opinions began:

> Dr. Siddiqi is barely a treating source as she only very rarely sees the claimant and there is no evidence of sustained medication use by the patient. Her assessments are not accepted as controlling for that reason and also because the doctor never alludes to the client's cocaine dependence.

(Tr. 28). It was not an error of law for the ALJ to consider whether or not Dr. Siddiqi treated Plaintiff frequently enough to qualify as a treating medical source. *See* 20 C.F.R. §404.1527(d)(2)(i), (ii).

    The ALJ apparently concluded that Dr. Siddiqi qualified as a treating medical, although "barely" so. (Tr. 28). Thus, the issue is not whether Dr. Siddiqi is a treating medical source; the issue instead is whether substantial evidence supports the ALJ's factual findings in support of his decision not to place controlling weight on Dr. Siddiqi's opinion.

    Substantial evidence does not support the ALJ's factual finding that Plaintiff rarely sees Plaintiff. Plaintiff first saw Dr. Siddiqi in November 2003, and then saw her ten

13

more times in the next year and a half before preparing an assessment of her ability to functions.  *See* Tr. 269-96, 346-56.  No reasonable person could conclude that this frequency and length of treatment was tantamount rare psychiatric treatment.  And, consequently, substantial evidence does not support the ALJ's finding that Dr. Siddiqi "rarely sees" Plaintiff.  (Tr. 28).

      The ALJ's second reason for not placing controlling weight on Dr. Siddiqi's opinion concerned the ALJ observation that Dr. Siddiqi "never alludes to the client's cocaine dependence."  (Tr. 28).  Assuming this was an attempt by the ALJ to explain why Dr. Siddiqi's opinion was not well supported, a factor necessary to trigger the treating physician rule, *see* 20 C.F.R. §404.1527(d)(2), substantial evidence does not support the ALJ's "never alludes to" finding.  In her initial evaluation of Plaintiff, Dr. Siddiqi notes that Plaintiff had a history of cocaine (until May 2003) and she also diagnosed "cocaine dependence" and that Plaintiff had been clean for several months.  (Tr. 278).  Thus, contrary to the ALJ's opinion that Dr. Siddiqi "never alludes to" Plaintiff's cocaine dependence, Dr. Siddiqi alluded to and diagnosed this early during Plaintiff's treatment.  *See id*.  Substantial evidence therefore fails to support this as a reason to reject Dr. Siddiqi's opinions.

      ALJ Padilla next noted, "Dr. Siddiqi also keeps referring to the client's condition as bipolar disorder which is not well supported by objective medical evidence ... as the 'manic' symptoms appear to be related solely to the crack cocaine."  (Tr. 28).  The first problem with this reason is that the ALJ relied on his own lay medical diagnosis, rather

than the diagnosis or opinion of a medical source, to reject Dr. Siddiqi's diagnosis of bipolar disorder. This constitutes error, because "an ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); *see Meece v. Barnhart*, 2006 WL 2271336, *8 (6th Cir. 2006)("the ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2nd Cir. 1999)("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion."). Dr. Siddiqi explained, moreover, that Plaintiff would have no ability to withstand the pressure of meeting normal standards of work production due to her "mood lability,"[4] and that she could not sustain attention and concentration on her work to meet normal standards of work productivity because she was "easily distracted due to racing thoughts & poor impulse control." (Tr. 362). Thus, contrary to the ALJ's decision, Dr. Siddiqi grounded her opinions, including her diagnosis of bipolar disorder, in part on symptoms consistent with the "manic" component of Plaintiff's bipolar disorder. *See* Tr. 358-62; *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at pp. 382-87.

In addition, the ALJ erred by requiring objective evidence to support Dr. Siddiqi's opinions. As the United States Court of Appeals for the Sixth Circuit has explained:

---

[4] Emotional lability is defined as "[e]xcessive emotional reactivity associated with frequent changes or swings in emotions or mood." Taber's Cyclopedic Medical Dictionary at 1127 (19th Ed. 2001).

15

> In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices ... in order to obtain objective clinical manifestations of mental illness.... [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology.  The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987)(other citation omitted).

Turning to the medical sources upon whom the ALJ relied – Dr. Leon (an earlier treating psychiatrist) and Dr. McIntosh (a one-time examiner) – the ALJ noted that they "did not assess the claimant as disabled."  (Tr. 29).  While it is unclear whether the ALJ thought this was a further reason to reject Dr. Siddiqi's opinion, *see* Tr. 27-28, the ALJ provided no explanation or indication of what regulatory factors led him to accept the opinions of Drs. Leon and McIntosh over the opinions of Dr. Siddiqi.  *See id*.

The ALJ was also swayed in his evaluation of the evidence by the fact that while Plaintiff was pregnant and breastfeeding, she was not on her regular medications.  The ALJ wrote, "If the claimant has the severity of symptoms alleged, surely medications necessary to maintain adequate mental functioning would be more important than breastfeeding, especially since she lives alone with her infant and is the primary caregiver."  (Tr. 30).  Plaintiff correctly points out that a decision regarding what medications Plaintiff should or should not be taking while pregnant and breastfeeding is a

16

medical decision. The ALJ, moreover, did not rely on a medical opinion to support his implicit belief that the her medications were unnecessary or his explicit finding that her symptoms were not as severe as alleged. The ALJ, moreover, overlooked or ignored that even though Plaintiff lives alone with her baby, she obtains significant help from her mother and other family members. Her mother visits almost daily and helps with housework. Her aunts and cousins also provide similar help.

Accordingly, Plaintiff's challenges to the ALJ's decision are well taken.

## VI.  REMAND IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A conflict exists in the record between the opinions of Plaintiff's treating psychiatrist, Dr. Siddiqi, and those of one-time examiner, Dr. McIntosh, that has not been resolved under the standards required by the Regulations. Given this evidentiary conflict,

17

judicial award of benefits is unwarranted because the evidence of Plaintiff's disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176.

Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration for further proceedings pursuant to Sentence Four of §405(g) due to the ALJ's failure to weigh the medical source opinions of record as required by the Regulations. On remand, the Commissioner and the ALJ should be directed to (1) re-evaluate the medical source opinions under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; (2) explain the evaluation of the medical sources as required by the Regulations, Rulings, and case law; and (3) determine anew whether Plaintiff is under a "disability."

Accordingly, the case must be remanded to the Commissioner and the ALJ under Sentence Four of 42 U.S.C. §405(g) for further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Tina Thomas was under a "disability" within the meaning of the Social Security Act during the period of time at issue;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

    4.       The case be terminated on the docket of this Court.

August 1, 2008

                                                     s/ Sharon L. Ovington
                                                    Sharon L. Ovington
                                      United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Am,* 474 U.S. 140 (1985).